BROOKS v JANUARY

Docket No. 53058. Submitted January 13, 1982, at Detroit.—Decided
    May 4, 1982.

    Plaintiffs, Carol Brooks and various other members of the
    Greater Zion Hill Baptist Church, brought an action seeking to
    enjoin defendant Stanley J. January, pastor of the church, from
    exercising the functions and duties of his office. Plaintiffs also
    sought the return of certain personal property, an accounting
    of church monies and a judgment against Pastor January for
    conversion of monies and personal property. Pastor January
    then filed a suit naming various members of the plaintiffs'
    dissident group and the City of Detroit as defendants. In that
    suit the pastor sought to enjoin the dissident group from
    withholding his weekly pay and from denying him physical
    access to the church's property. He also sought to enjoin the
    city from distributing any monies due the church for the
    purchase of its property. Plaintiffs then amended their lawsuit
    to include the City of Detroit as a defendant alleging that it
    paid the wrong parties for the purchase of the church's prop-
    erty. The two cases were ordered consolidated. Defendant City
    of Detroit's motion for accelerated judgment was granted prior
    to the trial. Following a bench trial a judgment of no cause of
    action was entered in favor of defendant January. Plaintiffs

REFERENCES FOR POINTS IN HEADNOTES
[1] 66 Am Jur 2d, Religious Societies §§ 31, 45.
[2] 66 Am Jur 2d, Religious Societies § 32.
[3] 66 Am Jur 2d, Religious Societies §§ 14, 15.
[4] 66 Am Jur 2d, Religious Societies § 18.
[5] 3 Am Jur 2d, Agency §§ 183, 186.
[6] 5 Am Jur 2d, Appeal and Error § 545.
[7] 4 Am Jur 2d, Appeal and Error §§ 103, 104.
[8] 5 Am Jur 2d, Appeal and Error § 700.
[9] 3 Am Jur 2d, Agency § 125.
[10] 66 Am Jur 2d, Religious Societies §§ 36, 43.
[11] 5 Am Jur 2d, Appeal and Error §§ 772, 869, 880.
    17 Am Jur 2d, Contempt §§ 4, 42.

appeal from both the order and judgment of the Wayne Circuit Court, Benjamin D. Burdick, J. *Held:*

1. The issues presented in this case may properly be resolved by the civil courts since property rights are involved.

2. The trial court's determination, that a meeting was not properly called or conducted and that the supposed deposition of the pastor at such meeting was, therefore, without effect, was proper.

3. The trial court's finding, that the failure to notify the church's membership that the purpose of a special meeting would be to conduct a vote on the deposition of the pastor rendered the vote without effect, was proper.

4. Church monies were not unlawfully converted by Pastor January when he purchased new church property and paid attorney fees incident thereto. Even if such acts were a wrongful exertion of dominion over the church's property, since the pastor was not validly deposed, he continued to be the authorized leader of the church, and those who followed him as church members could, and did, properly ratify the expenditures. Such ratification by the church would release the pastor from any liability for damages to the church for having violated a duty to the church.

5. The plaintiffs' stipulation at trial that the conveyance of the church's property to the city was valid precludes appellate review of the validity of the conveyance.

6. The accelerated judgment was properly granted to the city since the plaintiffs, by stipulating that the conveyance was valid, admitted that the pastor had authority to sell the property and to receive payment for the sale. The disposition of the funds after they were validly received by the church is not the city's responsibility, but is a matter to be dealt with by the factions within the church.

7. The trial court's determination that the pastor was not guilty of contempt in violating a temporary restraining order pertaining to the funds received for the sale of the church's property was not an abuse of discretion and was supported by competent evidence.

Affirmed.

1. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — JUDICIAL INTERFERENCE IN AFFAIRS — PROPERTY RIGHTS — CIVIL LAW.

Judicial interference in the purely ecclesiastical affairs of religious organizations is improper; however, when property rights are involved they are to be tested in the civil courts by the civil laws.

2. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — CHURCH MEETINGS
— APPEAL.

A trial court's determination, that a church meeting was not properly conducted and, therefore, the action taken at the meeting was without effect, should be affirmed on appeal where supported by the evidence and the rules of the church.

3. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — CHURCH MEETINGS.

A failure to properly notify members of a church that the purpose of a special church meeting would be to vote on a certain course of action renders a vote taken in the meeting regarding the course of action without effect.

4. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — CHURCH PROPERTY
— PURCHASES.

The purchase of real estate and payment of attorney fees incident thereto with church funds, by a person who is authorized by the church to purchase the property and to conduct all business matters in connection therewith, is not an action of dominion wrongfully exerted over the church's property.

5. AGENCY — RATIFICATION OF ACTS.

The ratification or other affirmance by a principal of an unauthorized act done by an agent in excess of his power to bind the principal releases the agent from liability for damages to the principal for having violated a duty to him.

6. APPEAL — PRESERVING QUESTION.

Issues not raised in the trial court by the pleadings, including claims not presented in the complaint, will ordinarily not be considered on appeal.

7. APPEAL — FINAL ORDERS — MULTIPLE PARTIES — COURT RULES.

An order granting a defendant's motion for accelerated judgment is not a final appealable order, in an action involving multiple defendants, where such order does not make an express determination that there is no just reason for delay or expressly direct the entry of the judgment in accordance with the court rule regarding judgments involving multiple parties (GCR 1963, 518.2).

8. APPEAL — PRESERVING QUESTION.

An appellant who merely asserts a position without citing any applicable case law or policy considerations is deemed to have abandoned his argument.

9. AGENCY — SALE OF PROPERTY — RECEIPT OF PURCHASE PRICE.
    An agent's authority to transfer the principal's property for sale includes the authority to receive the purchase price therefor, unless the principal and agent otherwise agree.

10. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — DISPOSITION OF FUNDS.
    The disposition of funds validly received by a church for the sale of its property is not the responsibility of the purchaser, but is a matter to be dealt with by the factions within the church.

11. APPEAL — CONTEMPT — EVIDENCE.
    A trial court's determination that a party was not guilty of contempt will not be reversed on appeal where there is no abuse of discretion shown and the determination is supported by competent evidence.

*Herman J. Anderson, P.C.,* for plaintiffs.

*Sylvester Delaney,* Deputy Corporation Counsel, and *Joseph N. Baltimore* and *Charles W. Anderson, III,* Assistants Corporation Counsel, for defendant City of Detroit.

Before: CYNAR, P.J., and M. J. KELLY and D. C. RILEY, JJ.

CYNAR, P.J. Plaintiffs appeal as of right from a judgment of no cause of action in favor of defendant Stanley J. January. The judgment was entered on July 21, 1980, following a bench trial held in Wayne County Circuit Court on July 10 through July 21, 1980. Plaintiffs also appeal from an accelerated judgment entered in favor of defendant City of Detroit on July 10, 1980, following a hearing conducted prior to trial. Defendant City of Detroit contends that the appeal is not timely and, therefore, not of right.

This case initially arose out of a dispute between factions within the membership of the Greater Zion Hill Baptist Church, an ecclesiastical corpora-

tion incorporated pursuant to MCL 458.101; MSA 21.1781. Plaintiffs, as members of the Greater Zion Hill Baptist Church, filed a lawsuit on June 7, 1976, seeking to enjoin the pastor of the church, Stanley J. January, from exercising any of the functions and duties of the office of the pastor of the church, and sought return and repossession of certain personal property, an accounting of all church monies spent by the pastor and a judgment against the pastor for conversion of monies and personal property.

On May 9, 1976, at the conclusion of the church's regular morning service, Pastor January announced that a church business meeting would be held on May 23, 1976, following the church's morning services. The pastor indicated that the purpose of the meeting was to determine whether to accept an offer of the City of Detroit to purchase the church's real estate and personal property, situated at 1351 Livingstone in the City of Detroit, for $29,000.

On May 23, 1976, after the conclusion of the church's morning services, the meeting was held. A motion was made to accept the offer of the City of Detroit to purchase the church's real estate and personal property. Some time in April of 1976, five church members signed a letter asking the pastor to resign because of alleged improprieties. Upon receipt of the letter, Pastor January refused to resign. At the May 23 meeting, before a vote could be taken on the motion to accept the city's offer, plaintiff Dan Flowers, a member of the church, objected to voting for or against the city's offer until it was determined whether or not defendant January was going to continue as pastor of the church. Dan Flowers was overruled and the members voted unanimously to accept the city's offer.

The sequence of the events which followed was disputed. According to Pastor January, following the vote, he, as chairman, ordered the meeting dismissed. After dismissing the meeting, a "commotion" broke out among the members and Pastor January and several members left. According to various other witnesses, the "commotion" had begun before the meeting was adjourned. Several members had begun arguing, and the police appeared in answer to a call that one of the members had a gun. Failing to find a gun, the police left, and Pastor January then indicated that the meeting was closed.

After Pastor January called the meeting to a close, Dan Flowers urged that the members stay. Dan Flowers was a member of the church, but was not elected or appointed by the membership to any position of authority within the church. With the exception of one member, Deacon Stokes, who abstained, all members who remained voted to depose the pastor. As of May 23, 1976, there were 61 members of the church in good standing. Fifty-two church members were present at the beginning of the May 23 meeting. Twenty-nine members of the church remained after the pastor and other members had left. Five of the church members who had voted to depose the pastor were between the ages of 8 and 15. Testimony of witnesses indicated any member of the church in good standing, child or adult, was entitled to vote at a meeting of the church.

A major issue in this case was whether the pastor was validly deposed. While plaintiffs contend that the meeting was validly continued, and that the pastor was in fact deposed, Fred Flowers, chairman of the deacon board, testified that Dan Flowers did not have the authority to call or continue a meeting on that matter.

On May 27, 1976, the City of Detroit received a letter from Annie P. Jackson, secretary of the church, informing the city that, as of May 23, 1976, the Reverend Stanley J. January was no longer authorized to proceed on behalf of the church in the sale of the church property, and that all inquiries regarding the property were to be directed to Mr. Luther Reese, trustee of the church and one of the plaintiffs herein. On June 3, 1976, Reverend Stanley J. January, Pastor, and plaintiffs Reverend Dan Flowers and Luther Reese executed, on behalf of the Greater Zion Hill Baptist Church, stipulations agreeing to sell the church real property and fixtures to the City of Detroit for $29,747.78. On June 7, 1976, plaintiffs filed their complaint against Pastor January. On July 23, 1976, the pastor filed a lawsuit naming various members of the dissident group and the City of Detroit as defendants. The pastor sought an injunction restraining the dissident group from withholding his weekly pay and from denying him physical access to the church's property. He also sought an injunction against the city restraining it from distributing any monies due to the church for the purchase of the real estate. On September 3, 1976, plaintiffs amended their lawsuit to include the City of Detroit as a defendant and alleged that defendant January, without proper authority from the church, accepted an offer made by the defendant city to purchase the real estate. On the same day, the two lawsuits were ordered consolidated.

On October 27, 1976, Mr. Allan Nachman, attorney for the church, wrote a letter to the City of Detroit advising the city that he had been retained to resolve the sales transaction of the church property and that Reverend January had the full authority of the church to sell the real property

and fixtures to the City of Detroit. Mr. Nachman forwarded a copy of a consent resolution of the Greater Zion Hill Baptist Church to the City of Detroit. The resolution, signed by 35 adult members of the church in good standing, gave express authority to Reverend January to do everything necessary to conclude the sale of the church property.

On March 7, 1977, Reverend January and Fred Flowers delivered a warranty deed to the church's real property at 1351 Livingstone, Detroit, to the city. The parties stipulated, and pursuant thereto, it was ordered admitted at trial that the warranty deed conveying the real property on Livingstone was a valid conveyance of said real property. The City of Detroit issued two checks in the name of the Greater Zion Hill Baptist Church as payment for the real property and fixtures thereon, which were delivered to Reverend Stanley January.

On April 26, 1977, those two checks were cashed to purchase cashier's checks in the amount of $29,747.78, made payable to the Greater Zion Hill Baptist Church. Both cashier's checks were deposited into the account of the Greater Zion Hill Baptist Church at the National Bank of Detroit.

On May 3, 1977, a temporary restraining order and an order to show cause were issued enjoining the pastor from spending any part of the money received on behalf of the church from the city for the purchase of the church property.

On May 26, 1977, Reverend January, Annie McFarley and Fred Flowers, representing the church, signed a land contract agreeing to purchase property located at 4455 Barham for the "Greater Zion Hill Missionary Baptist Church, a Michigan Ecclesiastical Corporation". Reverend January explained at trial that the insertion of

the additional term "Missionary" in the title of the church was a typographical error by the secretary and that the two churches were one and the same. The purchase had been authorized at a meeting held on May 7, 1977, at which the 18 church members present unanimously voted to authorize Reverend January to purchase the property to be used as the new location for the church.

Following a prehearing on September 29, 1977, the circuit court judge declined to find defendant January guilty of contempt for having violated the temporary restraining order, after finding that plaintiffs had not sustained the burden of proof required to show that Pastor January had received notice of the injunction.

On April 8, 1980, plaintiffs filed a cross-complaint against the City of Detroit, charging that the city knew that there were two factions within the church, each contending that they were the lawful representatives of the church. The plaintiffs further alleged that, notwithstanding this knowledge, the city had paid the disputed funds to the wrong group and was, therefore, liable to the plaintiffs in the event that it was determined that they were the proper representatives of the church. The City of Detroit filed a motion for accelerated judgment which was granted on July 10, 1980. The trial court determined that the funds were in fact paid to and deposited in the account of the church.

On July 21, 1980, following a bench trial, the court held that there was no cause of action as to defendant January.

Plaintiffs contended that defendant January was validly deposed as pastor by a majority of the membership of the church during a regularly scheduled church meeting. Judicial interference in

the purely ecclesiastical affairs of religious organizations is improper. However, "when property rights are involved they are to be tested in the civil courts by the civil laws". *Berry v Bruce,* 317 Mich 490, 499; 27 NW2d 67 (1947).

" 'The civil courts will not enter into a consideration of church doctrine or church discipline, nor will they inquire into the regularity of the proceedings of the church judicatories having cognizance of such matters. * * * Where, however, a church controversy involves rights growing out of a contract recognized by the civil law, or the right to the possession of property, civil tribunals cannot avoid adjudicating these rights under the law of the land, having in view, nevertheless, the implied obligations imputed to those parties to the controversy who have voluntarily submitted themselves to the authority of the church by connecting themselves with it. Therefore, where it is admitted, as in this case, that property belongs to a particular church, and the only question is whether the defendant claiming to be pastor should be excluded from its use, this court will only consider whether the church has ordered his exclusion, not whether it was right in so doing. Neither will the court as a civil tribunal undertake to determine whether the resolution directing exclusion was passed in accordance with the canon law of the church, except in so far as it may be necessary to do so in determining whether it was, in fact, the church that acted.' *Morris Street Baptist Church v Dart,* 67 SC 338 (45 SE 753; 100 Am St Rep 727)." *Borgman v Bultema,* 213 Mich 684, 703; 182 NW 91 (1921).

The relief sought by plaintiffs in their complaint, *i.e.,* denial of the right to control or use church funds and property to the defendant January, brings the instant suit within the exception outlined. It must be determined whether "the Church" in fact acted to exclude defendant January from use of church property by deposing him. Evidence at trial of the procedure by which mem-

bers of the church could successfully depose the pastor was scant at best. The various guide books published by the congregation itself provide minimal guidance as to the procedure to be utilized. One pamphlet, entitled "Officers and Members Obligations and Responsibilities" provides "No leader will be fully dismissed or disqualified as a leader, only, at church meetings or leadership meetings". Though the literal meaning of the provision, as punctuated in the original, is questionable, as the pamphlet appears to have been drafted rather informally, "only" would seem to be best interpreted as "except". The "Membership Guidebook" provides "No meetings or changes are legalized without the endorsement of the Pastor and Official Board of the Church". The officers of the church are the pastor and deacons. Section 15 of the "General Church Program and Membership Guide" provides that "Church meeting will be held on the 3rd Sat night of each quarter".

The trial court found (1) the May 23, 1976, meeting was not properly called or conducted without the presence or acquiescence of the pastor and the board and (2) even if it had been properly continued a quorum, or majority of the church membership, was not present. The trial court found that the defendant had, one or two weeks prior to the meeting, called for the May 23, 1976, meeting to be held for the purpose of accepting or rejecting the City of Detroit's offer to purchase the church building on Livingstone. When the church meeting opened, there were a total of 61 church members in good standing, 52 of whom were present.

Though there was conflicting testimony regarding whether the pastor actually called the meeting to a close before or after the "melee" began, the

trial court found that "the pastor adjourned the meeting", and that Dan Flowers called "his meeting" to order and proceeded to conduct the meeting "though not a member of the board of deacons or in any capacity was he permitted to do this". At the time the vote was taken during the second meeting, testimony indicated there were between 25 and 29 members present. A list of those present compiled after the meeting included 29 names. When the meeting was convened, the attendance list indicated that there were three deacons present. Apparently, from the list of persons who remained for the continuation of the meeting, Deacon Stokes was the only deacon who remained. However, testimony at trial indicated that while Deacon Stokes remained after the others had left it was not clear whether he in fact remained during the voting, and if he did, it was indicated that he abstained.

The trial court's determination, that the meeting was not properly continued and that the supposed deposition of the pastor was without effect because of the absence of the pastor and the board, is supported by the evidence and the rules of the Greater Zion Hill Baptist Church. The evidence indicated that the meeting was brought to a close by the pastor. The meeting was resumed, or the second meeting began, without the approval or endorsement of either the pastor or the official board of the church.

Similarly, the trial court's finding, that the failure to notify the church membership that the purpose of the special meeting would be, in addition to voting on the sale of the property, to vote on the deposition of the pastor rendered the latter without effect, is supported in Michigan law. In *Horbal v St John's Greek Catholic Church*, 260

Mich 331; 244 NW 493 (1932), the validity of a vote by parishioners taken at a special meeting was at issue. Except for the annual meeting of parishioners, there was no provision in the church bylaws for holding parish meetings. The notice of the meeting failed to refer to the purpose of the meeting, the mortgage of church property. The Court observed:

"A statement of the purpose of a special meeting in the notice thereof is usually required by the by-laws, but an express provision to that effect is not necessary. Notice of such meetings must generally contain a statement of the purpose, especially when business of an unusual nature is to be transacted. The failure of the by-laws to require specifically that the purpose of a special meeting must be stated in the notice does not obviate the necessity of such statement. 5 Fletcher, Cyclopedia of Corporations (Perm ed), p 49. The modern trend of authority is that the purpose of such a meeting must be stated." *Id.,* 337. (Citations omitted.)

While the Court observed that some decisions had held that less formality is required in calling meetings of ecclesiastical corporations than those formed for business purposes, citing authority in other jurisdictions, and then proceeded to provide additional affirmative support for its conclusion that the meeting was irregular and without effect, the Court's initial suggestion would be applicable here. The meeting in the instant case was not a regular meeting. The trial court found that the only purpose of the meeting included in the pastor's notice to parishioners was to vote on the sale of the church property. Notice not having been properly given, it would follow, as suggested by the Court in *Horbal,* that the vote in the second meeting was without effect.

Plaintiffs contend on appeal that church monies

were unlawfully converted by defendant January when he purchased the Barham property and paid attorney fees.

The trial court found that defendant was the pastor of the church and the purchase of the real estate and payment of attorney fees was authorized by the church.

Plaintiffs assert that for the purchase of real property by an ecclesiastical corporation to be authorized, notice must be given and a church meeting must be held "at which final action shall be taken authorizing such purchase * * *; and after such authority shall have been so granted by the church, the trustees shall have full power to purchase * * * such real estate upon such terms and conditions as shall not be inconsistent with the instructions given by the church". MCL 458.104; MSA 21.1784.

At a church meeting held on May 7, 1977, by unanimous vote of the 18 members in attendance at the meeting, defendant was given authority to "sign the necessary papers to purchase the Church at 4455 Barham", and "to conduct all business matters relating to purchasing the above mentioned Church".

The minutes of the May 7, 1977, meeting indicate that the pastor was authorized to purchase the Barham property and to conduct all business matters in connection thereto, which would appear to encompass the engaging of an attorney.

Even if the purchase of the real estate and payment of attorney fees was an act of dominion wrongfully exerted over the church's property, subsequent events would indicate that that act of dominion was ratified or affirmed by the church. The ratification or other affirmance by a principal of an unauthorized act done by an agent in excess

of his power to bind the principal releases the agent from liability for damages to the principal for having violated a duty to him. Restatement Agency, 2d, § 416, pp 275-276. In *Scott v Trustees of First Free Methodist Church of Jackson,* 50 Mich 528; 15 NW 891 (1883), the trustees of a religious corporation had mortgaged certain church property and applied the proceeds to the use of the religious society. Subsequently, they desired to have the mortgage found invalid, arguing that the vote to empower them to so act had been improper and that the mortgage was, at its inception, void. The Court observed:

"As the society had power to direct the trustees, and was capable of assenting by any majority of the members willing to concur, so it had power and capacity to ratify the act of the trustees if done without a prior direction or without a preliminary assent of two-thirds. *M'Laughlin v Detroit & Milwaukee R Co,* 8 Mich 100 [1860]; *Taymouth v Koehler,* 35 Mich 22 [1876]; Brice's U V by Green 471. And where there are no intervening rights, as in this case, the ratification enures to the date of the act ratified. It is not necessary that there should be a direct proceeding with an express intent to ratify. It may be done indirectly and by acts of recognition or acquiescence, or acts inconsistent with repudiation or disapproval.

* * *

"We have seen that the money was obtained by the trustees for the use of the society, and we have also seen that the society had the benefit of it. It was in fact hired to complete the meeting house then in course of erection and was applied to that purpose, and that house is now occupied and has been by the members as a place of worship. The society certainly knew of the mortgage when the loan was made, but it allowed the money to be expended for its benefit without uttering any dissent whatever to the complainant. * * * It would be a waste of time to recite all the circumstances

bearing on the question. They compel the belief that the whole membership recognized the mortgage as a good debt for which the society was liable. The ratification is fully made out within the authorities cited." *Scott, supra,* 532-533.

The church building on Barham has been used by the membership since its purchase, at least by those who remain followers of Pastor January. Since the pastor was not validly deposed, he would continue to be the authorized leader of the church, and those who follow him as members of the church would have the power to ratify the expenditures made.

Plaintiffs, at trial, stipulated that the conveyance of the Livingstone property was valid. On appeal, plaintiffs ask this Court to declare defendant January a constructive trustee of the building on Barham Street. To be reviewable on appeal, questions must ordinarily first be presented to the trial court, *Dale v Whiteman,* 388 Mich 698; 202 NW2d 797 (1972), *Highland Park v Royal Oak No 7 Storm Sewer Drain Dist,* 309 Mich 646; 16 NW2d 106 (1944). Issues not raised by the pleadings will ordinarily not be considered on appeal, and this includes claims not presented by the complaint. *Lester v Morenci Area Schools #10,* 365 Mich 537; 113 NW2d 778 (1962), *Highland Park, supra.* While there was some discussion at trial regarding the insertion of the extra term "Missionary" in the title of the church, plaintiffs never requested there the relief they seek on appeal. There was nothing presented below which this Court can review.

Reverend January's counsel conceded that the Greater Zion Hill Baptist Church owned the church on Barham. Defendant January indicated that the insertion of the extra term was merely a

typographical error by his secretary, and that the two churches were in fact one and the same. It would appear as though plaintiffs' concerns should be addressed in an action to reform the contract in order to remove the offending word. Such an action would properly be brought only before a trial court, and not a reviewing court.

Defendant City of Detroit is correct in asserting that the instant appeal was filed more than 20 days after the entry of the judgment in its favor. However, at that time, the accelerated judgment was not a final, appealable order. GCR 1963, 518.2 provides in part:

> "When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

The order granting defendant's motion for accelerated judgment included no such express determination and therefore was not appealable at that time.

Plaintiffs cite no authority in support of their proposition that the trial court erroneously granted accelerated judgment on the grounds that the claim was barred because of payment since the city had actual notice of the dispute within the church. By failing to cite applicable case law or any policy considerations, and by merely asserting a position, a party on appeal is deemed to have abandoned his argument. *Smith v Saginaw Savings & Loan Ass'n*, 94 Mich App 263, 274; 288 NW2d 613 (1979).

Furthermore, since the pastor was not in fact deposed, he continued to have authority pursuant to the resolution to sell the church, and payment was proper. Plaintiffs have stipulated that the conveyance was valid. By doing so they have admitted that the pastor had authority to sell the property and to receive payment for the sale. Unless otherwise agreed, an agent's authority to transfer the principal's property for sale includes authority to receive the purchase price. Restatement Agency, 2d, § 56, p 162.

The check which was given to the pastor was made out in the name of the church, and the money was thereafter deposited into the church's account.

In receiving the benefits of the sale, plaintiffs have affirmed the actions of Reverend January. The disposition of the funds after they were validly received by the church is not the responsibility of the City of Detroit but is a matter to be dealt with by the factions within the church. The grant of accelerated judgment was, therefore, proper.

The prehearing and trial of the instant case were heard by different judges. Following a prehearing held on September 29, 1977, the circuit court judge declined to find defendant January guilty of contempt. At that hearing it was established that the proof of service of the order to show cause and the temporary restraining order indicating that defendant had been served was filed. Defendant denied receiving the temporary restraining order or the order to show cause. The circuit judge, in refusing to find defendant in contempt, stated:

"This is an incomplete hearing on the issue of an

order to show cause why Reverend January should not be found guilty of contempt of court, in view of his disavowal of any knowledge of the injunction and claims on his part. I will, therefore, have to leave it to you to pursue that, Mr. Anderson [plaintiffs' attorney]. Reverend January has taken the stand. He has testified under oath. You may proceed to put in whatever proofs you wish at a subsequent time.

\* \* \*

"In view of the denial here by Reverend January, I am in no position to say that you have sustained the burden of proof required on your part to show that Reverend January was served with these papers."

The trial judge, in addition to the testimony presented, reviewed the text of the prehearing record. The trial judge's refusal to find defendant guilty was supported by competent evidence.

The trial court's determination that the defendant was not guilty of contempt was not an abuse of discretion.

Affirmed.