HODGINS KENNELS, INC v DURBIN

Docket Nos. 84353, 84366. Submitted December 8, 1987, at Detroit. Decided August 2, 1988. Leave to appeal applied for.

Hodgins Kennels, Inc., and Fred and Jan Hodgins brought an action in the Wayne Circuit Court against Mary Lou Durbin, Cathy Blight and others, alleging defamation, tortious interference with business relations and conspiracy to defame and tortiously interfere. The court, Henry J. Szymanski, J., granted judgment on a jury verdict for plaintiffs. Durbin and Blight appealed.

The Court of Appeals *held:*

1. The court did not err in denying defendants' motion for a directed verdict or judgment notwithstanding the verdict.

2. The court did not err in submitting the issue of a limited purpose public figure qualified privilege to the jury.

3. The court did not err in failing to find that defendants' communications were protected by a qualified privilege pursuant to the petition clause of the United States Constitution.

4. The court did not err in refusing to hold that the communications were about matters of public concern necessitating proof of actual malice to recover for defamation.

5. Review of instructional error is appropriate even absent a timely objection where it is apparent that the verdict of the jury may have been based upon a misconception of the law and reversal is appropriate where the failure to do so would be inconsistent with substantial justice. The court erred in giving an instruction which allowed the jury to find liability without fault amounting at least to negligence. The incorrect instruction affected the very essence of the case and all the claims were premised upon the defamation claim on which the jury was improperly instructed.

Reversed and remanded.

REFERENCES

Am Jur 2d, Appeal and Error §§ 623, 810 *et seq.*

Am Jur 2d, Judgments §§ 106 *et seq.*

Am Jur 2d, Libel and Slander §§ 178 *et seq.,* 192 *et seq.,* 302, 402, 485, 490.

Am Jur 2d, Trial §§ 469 *et seq.*

See Index to Annotations under Libel and Slander.

1. MOTIONS AND ORDERS — DIRECTED VERDICT.

In deciding whether to grant a motion for a directed verdict, the trial judge must accord to the nonmoving party the benefit of viewing the testimony and all the legitimate inferences that may be drawn from it in a light most favorable to the nonmoving party; if the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied.

2. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT.

When faced with a motion for judgment notwithstanding the verdict the court must view the evidence in a light most favorable to the nonmoving party and decide if the facts presented preclude judgment for the nonmoving party as a matter of law; if the evidence is such that reasonable men could differ, the question is one for the jury and judgment notwithstanding the verdict is improper.

3. LIBEL AND SLANDER — ACTIONS.

The following elements must be proven to demonstrate liability for defamation: (1) a false and defamatory statement concerning plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod).

4. LIBEL AND SLANDER — TRUTH — MOTIVE — CONSTITUTIONAL LAW.

A statement is not libelous if it is substantially true; the truth of and good motive behind an allegedly libelous statement are matters for jury determination (Const 1963, art 1, § 19).

5. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — LIMITED PURPOSE — PUBLIC FIGURES.

For purposes of the defamation qualified privilege, one who voluntarily injects himself or is drawn into a particular public controversy thereby becomes a public figure for a limited range of issues; the public figure status must exist prior to the alleged defamation and not by virtue of the notoriety created by it.

6. LIBEL AND SLANDER — PRIVATE PERSONS — NEGLIGENCE.

The standard for determining liability for defamation of a private-figure plaintiff where the speech at issue is of public concern is not malice, but negligence.

7. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.

Review of instructional error is appropriate even absent a timely objection where it is apparent that the verdict of the jury may

have been based upon a misconception of the law, and reversal is appropriate where the failure to do so would be inconsistent with substantial justice.

*Levin, Levin, Garvett & Dill* (by *Nancy L. Kahn* and *Jeffrey A. Heldt*), for plaintiffs.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher* (by *Michael J. Walter*), for defendant Durbin.

*American Civil Liberties Union of Michigan* (by *I. W. Winsten* and *Howard Yale Lederman*), for defendant Blight.

Amicus Curiae:

*Animal Legal Defense Fund* (by *David S. Favre*), for Animal Legal Defense Fund, Michigan Humane Society, Michigan Federation of Humane Societies, Humane Society of The United States, Animal Protection Institute of America, Fund for Animals, Inc., and International Primate Protection League.

Before: BEASLEY, P.J., and DOCTOROFF and C. W. SIMON, JR.,* JJ.

PER CURIAM. Defendants appeal as of right from a jury verdict of $233,700 in favor of plaintiffs on their claims of defamation, tortious interference with business relations, and conspiracy to defame and to tortiously interfere. We reverse and remand for a new trial.

Plaintiffs are state and federally licensed dealers who receive or purchase unwanted animals from municipal and county dog pounds, specifically Garden City and Monroe and Livingston Counties. These animals are those which have not been

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

adopted, are unclaimed, or about to be put to death. The animals then undergo certain conditioning which includes shots, worming treatments and quarantine. Plaintiffs sell these animals to hospitals, universities, and drug companies for use in medical research, experimentation, teaching, surgical and medical procedures, pharmaceutical testing, and toxicology studies.

Defendant Mary Lou Durbin, a teacher in the Garden City public schools, had done volunteer work for the Michigan Humane Society for approximately fifteen years and was a member of several animal welfare organizations.

Defendant Cathy Blight, a commercial artist, was the president of the Livingston County Humane Society from 1979 to 1983.

This litigation arises out of a number of allegedly defamatory oral and written statements which plaintiffs claim defendants made about them. Some statements made direct reference to plaintiffs; other statements referred to animal research that is performed on the animals once they are sold to the various facilities.

At trial, defendants testified that they did not meet each other until May, 1981, after plaintiffs filed this action.[1] They assert that the statements that they made regarding their opposition to "pound seizure"—the practice of releasing pound animals for anything other than adoption as pets —are not actionable by plaintiffs.

Although defendants and amicus curiae raise a plethora of issues, it is plaintiffs' defamation claim that is central to the determination of this appeal, for plaintiffs have premised their claims of tortious

---

[1] Several other defendants, who were part of the litigation below, are not parties to this appeal. One individual settled with plaintiffs during trial; two other individuals settled after trial. Defendant City of Garden City entered into a posttrial settlement with plaintiffs.

interference with business relations as well as their claims of conspiracy on some of the same allegedly wrongful conduct. After reviewing the record, we find that the jury was improperly instructed on defamation, thus necessitating a new trial.

Defendant Durbin now claims that the trial court abused its discretion by denying her motion for new trial based upon several claimed errors in jury instructions. Blight cites three of the same alleged errors, arguing that they necessitate reversal and remand for a new trial.

Before we turn to the instructional error, however, we will first address defendants' other claims of error regarding the defamation count in order to provide a framework within which the jury instruction can be evaluated.

Defendant Durbin first claims that the trial court erred by denying her motions for directed verdict and judgment notwithstanding verdict on plaintiffs' defamation claim. Defendant Blight argues that plaintiffs' defamation claim fails as a matter of law.

In *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975), our Supreme Court addressed the standard to be used in making the determination whether a motion for a directed verdict should be granted:

> The jury, not the trial judge, is the trier of fact. Whenever a fact question exists, upon which reasonable persons may differ, the trial judge may not direct a verdict. Conversely, when no fact question exists, the trial judge is justified in directing a verdict. In deciding whether or not to grant a motion for a directed verdict, the trial judge must accord to the non-moving party the benefit of viewing the testimony and all legitimate inferences that may be drawn therefrom in a light

most favorable to the non-moving party. If the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied. In *Detroit & Milwaukee R Co v Van Steinburg,* 17 Mich 99, 117 (1868), Chief Justice THOMAS M. COOLEY said:

"In determining this question, we must look at the case as it appears from the plaintiff's own testimony, unqualified by any which was offered on the part of the defendants, and must concede to him any thing which he could fairly claim upon that evidence. He had a right to ask the jury to believe the case as he presented it; and, however improbable some portions of his testimony may appear to us, we can not say that the jury might not have given it full credence. It is for them, and not for the court to compare and weigh the evidence."

In *Smart v The New Hampshire Ins Co,* 148 Mich App 724, 731; 384 NW2d 772 (1985), this Court articulated the applicable standard of review for motions for judgment notwithstanding the verdict:

When faced with a motion for judgment notwithstanding the verdict the court must view the evidence in a light most favorable to the nonmoving party and decide if the facts presented preclude judgment for the nonmoving party as a matter of law. If the evidence is such that reasonable men could differ, the question is one for the jury and judgment notwithstanding the verdict is improper. See *Drummey v Henry,* 115 Mich App 107; 320 NW2d 309 (1982), *lv den* 417 Mich 895 (1983).

In order to establish liability for defamation, a plaintiff must prove the existence of the following:

(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third

party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation *per quod*).

*Postill v Booth Newspapers, Inc,* 118 Mich App 608, 618; 325 NW2d 511 (1982), lv den 417 Mich 1050 (1983), citing Restatement Torts, 2d, § 558; *Curtis v Evening News Ass'n,* 135 Mich App 101, 103; 352 NW2d 355 (1984); *Morganroth v Whitall,* 161 Mich App 785, 789; 411 NW2d 859 (1987). See also *Rouch v Enquirer & News of Battle Creek,* 427 Mich 157, 173-174; 398 NW2d 245 (1986). The fault which a plaintiff must prove varies with whether the allegedly defamed person, plaintiff, is a "public official or figure" or a private person. *Postill, supra,* p 618.

At trial, plaintiffs alleged that Durbin and Blight made numerous defamatory statements about them. They challenge a number of statements and documents as a whole, some of which referred to certain of plaintiffs by name. They also argue that defendants' combined written and oral statements about medical research and mistreatment of animals can reasonably be interpreted as reflecting on them because they are involved in a system of animal handling and medical research. Defendants, however, now contend that the statements they made were not statements "of and concerning plaintiffs."

A person does not have a cause of action for defamation unless it is he or she who is defamed. See *Lewis v Soule,* 3 Mich 514, 521 (1855); *Curtis, supra,* p 103. When a publication, on its face, makes no reference to a plaintiff, plaintiff must sustain the burden of pleading and proof, by way of "colloquium," that the defamatory meaning

attached to him. When the defamatory words are directed at a group of persons rather than at an individual, the plaintiff must first show that he is a member of the class defamed. Where a statement contains not even an oblique reference to the plaintiff as an individual, the plaintiff's witnesses must show a basis for the belief that plaintiff was being attacked. *New York Times Co v Sullivan,* 376 US 254, 288-289; 84 S Ct 710; 11 L Ed 2d 686 (1964). Additionally, the plaintiff must establish some reasonable personal application of the words to himself. Beyond that, if the words have no personal application to the plaintiff, they are not actionable by him. See, e.g., *Michigan United Conservation Clubs v CBS News,* 485 F Supp 893, 897-898 (WD Mich, 1980), aff'd 665 F2d 110 (CA 6, 1981). Articles are to be read as a whole in determining whether portions of the articles are defamatory. *Sanders v Evening News Ass'n,* 313 Mich 334, 340; 21 NW2d 152 (1946); *Croton v Gillis,* 104 Mich App 104, 108; 304 NW2d 820 (1981). It remains a question for the court whether the meaning claimed might reasonably be conveyed, and for the jury whether it was so understood. See Prosser & Keeton on Torts (5th ed, 1984), Defamation, § 111, pp 782-783.

In the present case, a review of the evidence indicates that a defamatory meaning regarding plaintiffs may have been conveyed by defendants' statements. The trial court did not err by denying defendants' motions for directed verdict or judgment notwithstanding the verdict on this basis, for a factual issue existed upon which reasonable minds may have differed.

Defendants next assert that the trial court erred by denying their motions on the basis that the statements they made were false. They assert that the statements made directly about plaintiffs were

true. However, the evidence showed that defendants' statements may have defamed plaintiffs through colloquium even if direct statements were true.

Although a statement is not libelous if it is substantially true, *Cochrane v Wittbold,* 359 Mich 402, 409; 102 NW2d 459 (1960), the truth of and good motive behind an allegedly libelous statement are matters for jury determination. Const 1963, art 1, § 19.[2]

The evidence, when viewed in the light most favorable to plaintiffs, presented a factual question upon which reasonable minds could have differed. The trial court did not, therefore, err by denying defendants' motions for directed verdict or judgment notwithstanding the verdict on this basis.

Defendants next claim that plaintiffs' defamation claim was barred by a qualified privilege that required a showing of constitutional malice. Blight asserts that the trial court should have found that a qualified privilege existed as a matter of law rather than submitting the question to the jury through the use of a special verdict form.[3]

The initial determination whether a privilege exists is one of law for the court. See *Swenson-Davis v Martel,* 135 Mich App 632, 636; 354 NW2d 288 (1984), lv den 419 Mich 946 (1984). However, a question may be presented as to whether the extrinsic facts, as distinguished from the words themselves, are such as to justify the finding of an

---

[2] Const 1963, art 1, § 19 provides:

> In all prosecutions for libels the truth may be given in evidence to the jury; and, if it appears to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the accused shall be acquitted.

[3] We note that defendants argued in their joint trial brief that the issue presented a jury question.

occasion of privilege in the first place. *Lawrence v Fox,* 357 Mich 134, 140; 97 NW2d 719 (1959). When the facts are in dispute, the jury may decide whether a privilege exists after being instructed as to the proper rules to apply. Prosser, Torts (4th ed), § 115, p 796.

The first qualified privilege that defendants assert is applicable to the facts of this case is that of "limited purpose public figures." In *Gertz v Robert Welch, Inc,* 418 US 323, 351; 94 S Ct 2997; 41 L Ed 2d 789 (1974), the Supreme Court addressed the limited public figure classification, stating that an individual who voluntarily injects himself or is drawn into a particular public controversy thereby becomes a public figure for a limited range of issues. However, the public figure status must exist prior to the alleged defamation and not by virtue of the notoriety created by it. See, e.g., *Arber v Stahlin,* 382 Mich 300, 305; 170 NW2d 45 (1969), cert den 397 US 924; 90 S Ct 927; 25 L Ed 2d 103 (1970). By virtue of the disputed facts surrounding this case, the trial court did not err by submitting the issue of privilege to the jury.

Defendants also assert that they were protected by a qualified privilege pursuant to the petition clause. Amicus curiae argues that defendants were clothed with an absolute privilege. We note that the United States Supreme Court has rejected the notion that an absolute privilege exists for defendants charged with defamation in petitions to government officials. See *McDonald v Smith,* 472 US 479; 105 S Ct 2787; 86 L Ed 2d 384 (1985).

Further, defendants misperceive the import of the *McDonald* decision. They assert that this case stands for the proposition that a qualified privilege exists for petition clause activity pursuant to which a plaintiff must prove constitutional malice. It was in the *McDonald* case itself in which consti-

tutional malice had to be proven, for the plaintiff was a public figure. The *McDonald* Court specifically held:

> The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble. See *Mine Workers* [v *Illinois Bar Ass'n,* 389 US 217, 222; 88 S Ct 353; 19 L Ed 2d 426 (1967)]. These First Amendment rights are inseparable, *Thomas* [v *Collins,* 323 US 516, 530; 65 S Ct 315; 89 L Ed 430 (1945)], and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions. [472 US 485.]

In the present case, plaintiffs were not public officials. Defendants therefore had no qualified privilege regarding alleged defamatory statements made about them, even if all the statements at issue had been directed to petition clause activity in attempts to influence legislation as they assert and not to effectuate the termination of plaintiffs' contracts.

A review of the record does not indicate that the trial court erred by failing to find as a matter of law that defendants' communications were protected by this qualified privilege.

Finally, defendants assert that they were entitled to a qualified privilege on the basis that the alleged defamatory communications were about matters of public interest or concern, necessitating proof of actual malice. Defendant Blight specifically relies on *Dienes v Associated Newspapers, Inc,* 137 Mich App 272, 277; 358 NW2d 562 (1984), lv den 419 Mich 962 (1984), and *Kurz v The Evening News Ass'n,* 144 Mich App 205, 211; 375 NW2d 391 (1985), for the proposition that the activities of the Humane Society are matters of

public interest. We agree with Blight's proposition. However, those cases are distinguishable for the reason that the defendants therein were entitled to a qualified privilege by virtue of their status as media defendants.

Recently, our Supreme Court decided the case of *Rouch, supra.* In that case, the Supreme Court held that, in a defamation case that involves a private plaintiff and a matter of public interest, there exists no qualified privilege whereby that plaintiff must prove actual malice. Rather, the negligence standard as adopted in *Gertz, supra,* applies. *Rouch, supra,* p 187. See also *Dietz v Wometco West Michigan TV, Inc,* 160 Mich App 367, 375; 407 NW2d 649 (1987). Defendants' arguments regarding qualified privilege must, therefore, fail. We find no error regarding the trial court's denials of defendants' motions for directed verdicts or motions for judgments notwithstanding the verdict on these bases.

We now turn to the instructional error regarding defamation that we find requires reversal of this matter. Specifically, defendants claim that the instructions to the jury enabled it to find liability without finding fault. As hereinbefore stated, one of the elements that must be proven in order to demonstrate liability for defamation is fault amounting at least to negligence on the part of the publisher. See *Postill, supra,* p 618; *Morganroth, supra,* p 789.

In the present case, the standard jury instructions that the trial court gave addressed defamation claims in which a privilege applies, an issue that was submitted for jury determination. The trial court also gave an instruction to the jury regarding the law to apply in the event it found no applicable privilege. There was no standard jury instruction on point that would have applied to

this situation. Therefore, the trial court's additional instruction was required to be applicable and to accurately state the law. See *Young v E W Bliss Co,* 130 Mich App 363, 371; 343 NW2d 553 (1983).

Plaintiffs assert that defendants have failed to preserve this issue for appeal. We note that defendants neither requested an instruction that included the element of fault, nor objected to the jury instruction given. Nonetheless, we do not believe that this precludes our review of this issue.

In *Bluemlein v Szepanski,* 101 Mich App 184; 300 NW2d 493 (1980), lv den 411 Mich 995 (1981), the defendants claimed that the trial court erroneously instructed the jury. Plaintiff contended that the issue had not been preserved for appeal since defendants did not request the instruction they asserted should have been given and also failed to object to the instruction given, as defendants in the present case have done. This Court nonetheless reviewed the instruction, stating:

> This Court has held, in accordance with GCR 1963, 516.2 [now MCR 2.516(C)], that where the record shows no requests for instructions, nor an objection to the instructions which are given, this Court may not consider any error alleged as to instructions. *Obeginski v James,* 4 Mich App 90, 93; 143 NW2d 579 (1966). However, this Court may review an error regarding instructions in the absence of an objection to the court's instructions to the jury upon a showing of manifest injustice. *Earle v Colonial Theatre Co,* 82 Mich App 54, 57; 266 NW2d 466 (1978), *lv den* 403 Mich 816 (1978). We find that manifest injustice would result if this Court did not review this claim of error. The instruction of the trial court incorrectly stated the law, and the jury's verdict may have been based upon a misconception of the law. [101 Mich App 191.]

Similarly, in *Scalabrino v Grand Trunk W R Co,* 135 Mich App 758, 765; 356 NW2d 258 (1984), lv den 422 Mich 877 (1985), this Court held that review of instructional error is appropriate when it is apparent that the verdict of the jury may have been based upon a misconception of the law. The Court further held:

> [W]here an unlawful, erroneous, contradictory or conflicting instruction is given to a jury on an issue material to the case, the instruction is inherently defective and constitutes reversible error. *Kirby v Larson,* [400 Mich 585] 604-607 [256 NW2d 400 (1977)]. *Iwrey v Flowler,* 367 Mich 311, 314-316; 116 NW2d 722 (1962). *Getman v Mathews,* 125 Mich App 245, 247-248; 335 NW2d 671 (1983). [135 Mich App 766.]

Specifically, the trial court instructed the jury in relevant part:

> In order to prevail on the claims of defamation, plaintiffs have the burden of proving each of the following elements: That one or more of the defendants made the statements complained of to a third person by printing, writing, pictures or words and that the statement was of and concerning the plaintiffs. And, three, that such statements were false in some material respect and the statements had a tendency to harm the plaintiffs' reputation. The statements further, third and fourth, that the statements involved accusations of criminal activity, or were made in regard to plaintiffs' occupation or business. Or, in the alternative, that as a result of the statements the plaintiffs suffered some damages. The meaning of a statement is not that meaning which, under the circumstances— I'm sorry. I included a word that is critical that should not be there.
> The meaning of a statement is that meaning which, under the circumstances, a reasonable per-

son who hears or sees the statement reasonably understands to be the meaning intended. Your verdict will be for the plaintiff if you decide that all of these have been proved with respect to defamation. Your verdict will be for the defendants, or either of them, if you decide any one of these has not been proved with respect to defamation.

Okay. Let's go on. And critical to this definition of defamation, the statement must be of and concerning the plaintiff.

When I say the statement must have been of and concerning the plaintiff, as I just have, I mean that a person does not have a cause of action for defamation unless it is he or she who is defamed. It is not necessary, however, that the statement designate the plaintiff by name. It is enough that there is such a description or reference to him or her that those who hear or read reasonably understand the plaintiff is to be the person intended. In determining whether the statements were of and concerning the plaintiffs, you may rely on evidence other than the statements themselves.[4]

We find that the instruction given by the trial court misstated the law and allowed the jury to find liability without a finding of fault, since the jury specifically found no qualified privilege to exist. In this matter, the incorrect instruction affected the very essence of the case. We find that failure to reverse would be inconsistent with substantial justice, *United Gratiot Furniture Mart, Inc v Michigan Basic Property Ins Ass'n,* 159 Mich App 94, 103; 406 NW2d 239 (1987). The trial court, therefore, abused its discretion by denying the motion for new trial on this basis.

Because plaintiffs' other claims for tortious interference and conspiracy are premised upon the

---

[4] The trial court also instructed the jury as to the fact that they would have to find malice if they found that a qualified privilege existed.

defamation claim on which the jury was improperly instructed, this entire matter is reversed and remanded for a new trial.

We note in passing that Durbin has failed to cite any authority for the proposition that she has standing to object to an award of attorney fees made against another party, and is considered to have abandoned this argument on appeal. *Brooks v January,* 116 Mich App 15, 31; 321 NW2d 823 (1982). Our disposition of this matter renders it unnecessary to address remaining issues. See *Parsonson v Construction Equipment Co,* 18 Mich App 87, 90; 170 NW2d 479 (1969), aff'd 386 Mich 61; 191 NW2d 465 (1971).

Reversed and remanded for new trial. We do not retain jurisdiction.