LAKESHORE COMMUNITY HOSPITAL, INC v PERRY

Docket No. 143337. Submitted September 7, 1994, at Grand Rapids. Decided April 28, 1995; approved for publication July 27, 1995, at 9:05 A.M.

Lakeshore Community Hospital, Inc., brought an action in the Oceana Circuit Court against George Perry, alleging tortious interference with contractual or advantageous business relations. The plaintiff alleged that, after it had entered into an agreement with the Oceana Hospital Association to merge the two hospitals, the defendant interfered with that merger by making statements concerning the operation of plaintiff's hospital, by circulating petitions expressing opposition to the· merger, by threatening litigation concerning the merger, and by soliciting the proxies of members of the Oceana Hospital Association for the purpose of affecting the composition of the board of directors so as to defeat the merger, efforts that eventually resulted in the repudiation of the merger agreement. A jury returned a verdict for the plaintiff and awarded the plaintiff damages for out-of-pocket losses, but refused to award damages for lost profits. The trial court, John F. Huff, J., granted the plaintiff's motion for a new trial with respect to the issue of damages. Following a bench trial based on the record of the jury trial, the court awarded increased damages for out-of-pocket losses and awarded damages for lost profits. Thereafter, the court denied the defendant's motion for a judgment notwithstanding the verdict, rejecting the defendant's contention that his actions were privileged on First Amendment grounds. The defendant appealed, and the plaintiff cross appealed.

The Court of Appeals *held:*

1. Tortious interference with business relations may be caused by defamatory statements. As with other actions for defamation, the defense of privileged speech is available. A statement concerning a public figure is privileged under the

REFERENCES

Am Jur 2d, Libel and Slander § 76.

Who is "public figure" for purposes of defamation action. 19 ALR5th 1.

First Amendment and does not constitute actionable defamation unless the statement is shown to be a defamatory falsehood and was made with actual malice, that is, that it was made with knowledge that it was false or with reckless disregard of whether it was false or not. Further, statements of opinion are protected.

2. Most of the allegedly defamatory statements of the defendant are expressions of opinion that are protected under the First Amendment. The hallmark of the First Amendment guarantee of free speech is the right to express one's opinions in order to sway others into adopting similar opinions.

3. The plaintiff, a nonprofit corporation that formerly was owned by a municipality and is now ultimately subject to the control of the municipality, is a public figure for the purpose of determining whether there is actionable defamation. Accordingly, to the extent that the defendant's statements may be considered to be misstatements of fact rather than statements of opinion, those statements may be considered to be actionable defamation only if the defendant made them with actual malice. The question whether the evidence is sufficient to support a finding of actual malice is a question of law. The record in this case does not justify a finding of malice on the part of the defendant.

4. An appellate court must make an independent examination of the record to assure that a judgment does not constitute a forbidden intrusion on the field of free expression. Because the record demonstrates that the trial court misunderstood both the relationship of defamation principles to an action for tortious interference with business relations and the basic principles of actionable defamation, it cannot be said that the judgment against the defendant does not constitute a forbidden intrusion on the defendant's First Amendment rights. Accordingly, the judgment against the defendant must be vacated.

Vacated.

LIBEL AND SLANDER — HOSPITALS — PUBLIC FIGURES — MUNICIPAL CORPORATIONS.

A public nonprofit hospital that is controlled by a municipal corporation is a public figure for the purpose of determining whether a statement is actionable defamation or is protected free speech.

*Culver, Lague & McNally* (by *William F. McNally* and *Eric R. Gielow*) (*Bendure & Thomas,* by

*Mark R. Bendure* and *Sidney A. Klingler,* of Counsel), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *John P. Jacobs*), for the defendant.

Before: MacKenzie, P.J., and Griffin and M. J. Talbot,* JJ.

Per Curiam. This is an action for tortious interference with contractual or advantageous business relations. Defendant appeals as of right from an amended judgment in favor of plaintiff after a jury determination of liability and a retrial by the trial court regarding the question of damages. Plaintiff cross appeals, challenging the court's computation of statutory interest. We vacate the judgment against defendant.

This case arises from a failed merger agreement between plaintiff hospital, which is located in Shelby, and another hospital, Oceana Hospital Association, which is located approximately seven miles away, in Hart. Defendant, a Hart businessman, joined Oceana's board of trustees in January 1984. Discussion of a merger between the two hospitals began in late 1983 and early 1984, after plaintiff obtained a certificate of need to renovate its facility. A merger committee recommended to the board of each hospital that they form a fifty-six-bed merged hospital located at plaintiff's site in Shelby.

On July 12, 1984, the respective boards of Oceana and plaintiff approved a joint resolution to form one hospital. Defendant voted against the merger. On August 15, 1984, Oceana's association members voted, by a vote of 120 to 87, to ratify the July 12 resolution of Oceana's board, although

* Circuit judge, sitting on the Court of Appeals by assignment.

defendant spoke against the merger at this meeting.

After the August 15, 1984, ratification by Oceana's association members, defendant retained the services of legal counsel, separate from the legal counsel representing Oceana in the merger, to obtain assistance in his efforts to stop the merger. Defendant learned that the August 15 vote was invalid because a majority of the 345-person membership failed to vote in favor of the ratification. He printed and circulated several petitions, drafted by his attorney, urging rescission of the August membership vote and removal of board members. He took these petitions to the Board of Commissioners of Oceana County to show the commissioners that their constituents did not want the county to buy the Oceana facility, as contemplated under the merger. Defendant also took the petitions to the Oceana board and told the board that he hoped they would hold another meeting before the board would have to go to court. Defendant spoke at a Rotary luncheon in opposition to the proposed merger. In December 1984, however, plaintiff and Oceana signed an agreement and plan of merger.

Defendant then wrote a letter to the editor of the Muskegon *Chronicle* predicting that the Farmers Home Administration loan contemplated under the merger agreement would go into default because the merged hospital would be too costly, draining federal coffers of taxpayer dollars. He also drafted, printed, and circulated proxies that sought the votes of the Oceana membership with respect to proposals to rescind its August approval of the merger resolution, to remove the existing Oceana board of trustees, and to elect a new board. Ultimately, the pro-merger board members resigned, using resignation forms that defendant

prepared, enabling anti-merger persons to take control of the board.

On February 4, 1985, Oceana's new board voted to rescind the merger agreement.

In March 1985, plaintiff filed a complaint against defendant, Oceana, and Harry Lynch, another Oceana trustee. Plaintiff eventually settled with Oceana for $175,000. Later, it settled with Lynch. The case then went to trial on plaintiff's claim that defendant accomplished a breach of the merger agreement or termination of its advantageous business relationship with Oceana by improper means or wrongful conduct. Following a trial, the jury found defendant liable for plaintiff's out-of-pocket damages, which it set at $90,000. The jury refused to award plaintiff damages for lost profits, finding that they were "sheer speculation." Defendant was allowed a setoff of $50,000, reflecting the previously paid portion of Oceana's settlement with plaintiff. However, the trial court subsequently granted plaintiff's motion for a new trial with respect to the issue of damages. A bench trial followed, based on the record from the jury trial. On May 10, 1990, the court entered a judgment awarding plaintiff out-of-pocket damages of $252,453.51 and lost profits of $1,000,000.

Two weeks later, defendant moved for a judgment notwithstanding the verdict based in part on his contention that his actions were privileged on First Amendment grounds. The trial court denied the motion, stating in part:

The Court rejects Defendant's argument that he is protected by a qualified form of immunity as provided by *New York Times v Sullivan,* 376 US 254 [84 S Ct 810; 11 L Ed 2d 686] (1964). Defendant Perry was charged with tortious interference with a contractual relationship, not defamation.

The jury rejected his claim that he was a public or a quasi-public official and therefore was not protected by any privileges.

\* \* \*

The Defendant argues that the Court committed reversible error in refusing to give special requested jury instructions 9 and 10. The Court insists that it did not commit error in this regard as it has always contended that the Defendant was not a public official at the time in question nor was this an action of liable [sic] or slander. Therefore the burden of proof in this case is by a preponderance of the evidence and not, as claimed by the Defendant, by clear and convincing evidence.

The basic elements of tortious interference with a business relationship are the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted. *Winiemko v Valenti,* 203 Mich App 411, 416; 513 NW2d 181 (1994); *Wilkerson v Carlo,* 101 Mich App 629, 632; 300 NW2d 629 (1980).

Tortious interference with business relations may be caused by defamatory statements. *Id.* See also *Hodgins Kennels, Inc v Durbin,* 170 Mich App 474; 429 NW2d 189 (1988), rev'd in part on other grounds 432 Mich 894 (1989). As with defamation actions, where the conduct allegedly causing the business interference is a defendant's utterance of negative statements concerning a plaintiff, privileged speech is a defense. See *Brody v Montalbano,* 87 Cal App 3d 725, 738; 151 Cal Rptr 206 (1979), cert den 444 US 844 (1979). See also *NAACP v Claiborne Hardware Co,* 458 US 886; 102 S Ct

3409; 73 L Ed 2d 1215 (1982). And see *Hodgins Kennels, supra.*

The First and Fourteenth Amendments of the United States Constitution prohibit public figures from recovering damages caused by a defendant's statement unless they prove that the statement was a defamatory falsehood and that it was made with actual malice, that is, that it was made with knowledge that it was false or with reckless disregard of whether it was false. *New York Times Co v Sullivan,* 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964); *Curtis Publishing Co v Butts,* 388 US 130; 87 S Ct 1975; 18 L Ed 2d 1094 (1967). Where the plaintiff is a private figure, the qualified privilege protecting defendants by requiring a showing of actual malice does not apply, even if the private-figure plaintiff was defamed in the course of a discussion of an issue of public concern. Instead, private figures may recover, despite the defendant's First and Fourteenth Amendment rights, upon a showing that the defendant's statement was made negligently. *Gertz v Robert Welch, Inc,* 418 US 323; 94 S Ct 2997; 41 L Ed 2d 789 (1974); *Rouch v Enquirer & News of Battle Creek,* 427 Mich 157; 398 NW2d 245 (1986).

Regardless of the plaintiff's status as a public or private figure, the Supreme Court has also held that expressions of opinion are protected from defamation actions, *Gertz, supra,* including actions alleging interference with business, *Claiborne Hardware, supra.* Thus, in cases where statements reasonably cannot be interpreted as stating actual facts about an individual, those statements are protected under the First Amendment. *Garvelink v Detroit News,* 206 Mich App 604, 609; 522 NW2d 883 (1994), and cases cited therein.

In this case, plaintiff's theory, that defendant interfered with the hospital merger agreement,

was premised in large part on defendant's statements questioning the operation of plaintiff hospital, his circulation of petitions expressing opposition to the merger, his statements threatening to file a lawsuit over the merger, and his solicitation of proxies to cast votes affecting the composition of the Oceana board of directors. Having reviewed the record, we are convinced that these were expressions of opinion, protected under the First Amendment. Uninhibited debate of matters affecting the public is the hallmark of the First Amendment guarantees. Defendant was entitled to broadcast his views, without penalty, in order to sway others into adopting similar opinions concerning the merger.

Plaintiff has also alleged that defendant disseminated false statements of fact or "misinformation" concerning the need for the hospital merger and the desirability of Oceana merging with plaintiff. Although plaintiff, a nonprofit corporation, does not have a reputation in a personal sense, it does have a business reputation that can be defamed. *Michigan Microtech, Inc v Federated Publications, Inc,* 187 Mich App 178, 183; 466 NW2d 717 (1991). As indicated above, therefore, whether the statements were protected by a First Amendment qualified privilege depends on whether plaintiff—not defendant, as the trial court believed—is a public figure or a private figure.

Generally speaking, a public figure attains that status by voluntarily assuming a role of special prominence in the affairs of society, whereas a private figure has not assumed an influential role in society. See *Gertz, supra.* In this case, plaintiff was owned by the Village of Shelby until the contemplation of the merger, when it became a private nonprofit corporation. Even after this shift, the village retained veto powers concerning the

hospital's affairs. The hospital had been established in the community at least since the 1920s. For several years, it has been the only facility serving the community with an obstetric unit. Further, it has been the only facility in the community that is primarily an acute care hospital. In short, plaintiff has assumed the role of being a prominent and critical component of the health care delivery system in the community, whose presence and operation directly affect the community, and, to a lesser extent, are controlled by the village government. We therefore conclude that plaintiff was a public figure for purposes of this case. Accordingly, in order to recover damages, plaintiff had to show that defendant's statements were made with knowledge that they were false or with reckless disregard of whether they were false or not. *Hodgins v Times Herald Co,* 169 Mich App 245, 256; 425 NW2d 522 (1988).

The question whether the evidence is sufficient to support a finding of malice is a question of law. *Harte-Hanks Communications, Inc v Connaughton,* 491 US 657, 685; 109 S Ct 2678; 105 L Ed 2d 562 (1989). This record does not justify a finding of malice on the part of defendant. While the record leaves no doubt that defendant was vigorous in his opposition to the merger, it cannot reasonably be determined that defendant spoke recklessly or with actual knowledge that he was spreading untruths regarding plaintiff.

In light of the above, we conclude that the judgment against defendant must be vacated. Courts must make an independent examination of the record to assure that a judgment does not constitute a forbidden intrusion on the field of free expression. *Garvelink, supra,* p 608, citing *Sullivan, supra; Bose Corp v Consumers Union of United States, Inc,* 466 US 485, 499; 104 S Ct 1949;

80 L Ed 2d 502 (1984); *Locricchio v Evening News Ass'n,* 438 Mich 84, 110; 476 NW2d 112 (1991). In this case, the record shows that the trial court misunderstood both the relationship of defamation principles to an action for tortious interference with business relations and the basic principles of *Sullivan* and *Gertz*—principles that were vital to resolve the claim that defendant's campaign of "misinformation" constituted actionable wrongdoing. Further, as pointed out by defendant, the court failed to recognize that because *plaintiff* was a public figure, a showing of actual malice was necessary and that plaintiff's claim was subject to proof by clear and convincing evidence. *Gertz, supra.* Because these errors were so fundamental, we cannot say that the judgment against defendant does not constitute a forbidden intrusion on defendant's First Amendment rights. *Garvelink, supra,* p 608.

Our determination that the judgment against defendant must be vacated makes it unnecessary to consider the parties' remaining claims.

Vacated.