*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

TODD L. LEVITT,

        Plaintiff/Counterdefendant-
Appellant,

v

GORDON M. BLOEM, JAMES MARTIN
FELTON, and ANGELA FELTON,

        Defendant-Appellees,

and

KENNETH JAMES SANNEY,

        Defendant/Counterplaintiff,

and

DIGITAL FIRST MEDIA, MORNING SUN,
LISA YANICK-JONAITIS, JOHN and/or JANE
DOE 1, JOHN AND/OR JANE DOE 2, JOHN
AND/OR JANE DOE 3, JOHN AND/OR JANE
DOE 4 and JOHN AND/OR JANE DOE 5,

        Defendants.

UNPUBLISHED
May 21, 2019

No.   343299
Isabella Circuit Court
LC No.   15-012317-NZ

Before:  SHAPIRO, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

In this tort action, plaintiff Todd L. Levitt appeals by right, challenging the circuit court's opinion and order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) to defendants Gordon M. Bloem, James Felton, and Angela Felton.[1] We affirm.

I.

Many of the facts relevant to this appeal are before this Court for a third time. Plaintiff is an attorney and was an adjunct professor at Central Michigan University (CMU). In 2014, plaintiff sued CMU student Zachary Felton for his creation of a Twitter account parodying plaintiff. In *Levitt v Felton,* unpublished opinion per curiam of the Court of Appeals, issued May 19, 2016 (Docket No. 326362) (*Levitt I*), we upheld the trial court's decision to grant Felton summary disposition of plaintiff's claims.

Events that occurred during the pendency of the litigation in *Levitt I* led to the present suit. Mainly, soon after plaintiff filed his complaint in *Levitt I*, an encounter between plaintiff and Zachery's father, James Felton, who was also a professor at CMU, occurred when James Felton and Kenneth Sanney were walking past plaintiff's campus law office where plaintiff was sitting outside.[2] When plaintiff saw the two men, he came down the stairs and stood on the last step, allegedly looking at James Felton and Sanney in a menacing way. As the two men passed plaintiff, Sanney allegedly uttered to James Felton, "What a clown," prompting plaintiff to begin yelling obscenities. The altercation escalated, with plaintiff getting close to Sanney's face as he continued to yell and James Felton decided to make an audio recording of the incident on his cellphone. James Felton and Sanney reported the incident to the police the same day. James Felton shared the recording with his wife and Zachary's mother, Angela Felton, and approximately 10 to 12 other people; eventually, the recording was uploaded to the Internet and then removed a few days later.

Adding to this entanglement, Angela Felton became concerned when she saw threatening Tweets that plaintiff made toward both Zachary and James Felton, apparently in retribution for Zachary's creation of the parody Twitter account. Angela Felton informed campus police that she was concerned for her son's safety and provided the police with a packet of information containing plaintiff's threatening Tweets, the Twitter parody rules, and a google search reflecting the prevalence of parody Twitter accounts. When Angela Felton felt that campus police did not

---

[1] We refer to Gordon Bloem, James Felton, and Angela Felton collectively as "defendants." When referred to in their individual capacity, defendants are referred to as "Bloem," "James Felton," and "Angela Felton." When James Felton and Angela Felton are referred to together, the term "the Felton defendants" is used.

[2] Although Sanney is named as a defendant in this litigation, he is not part of this appeal. Plaintiff waived his right to appeal the circuit court's opinion and order as to Sanney in exchange for Sanney's stipulation to dismiss his counterclaim against plaintiff.

take her seriously, she provided a copy of the same information to the CMU newspaper, CM Life.[3]

The instant litigation also stemmed from media coverage of *Levitt* I. In August 2014, the Morning Sun, a local news outlet and subsidiary of Digital First Media,

> published an article discussing *Levitt I* with the headline, "[L]awyer suing student admits to fake award[.]" The article . . . contained information about the case [and] stated that plaintiff created the website "topcollegelawyers.com," and that the website announced plaintiff as the winner of a College Lawyer of the Year award. [*Levitt v Digital First Media*, unpublished opinion per curiam of the Court of Appeals, issued May 16, 2017 (Docket No. 330946), unpub op at 1-2.]

A subsequent Morning Sun news article, published in February 2015, recounted statements pertaining to the fake award made by Bloem, who represented Zachary Felton in *Levitt I*. Bloem stated in part that plaintiff's behavior was unethical.

These events eventually led plaintiff to file the instant suit, raising claims against multiple media defendants based on the August 2014 Morning Sun news article. The media defendants moved for summary disposition, in part, on the basis that the news articles contain privileged speech protected by the First Amendment. The circuit court denied the motion; on interlocutory appeal, this Court reversed and remanded for entry of an order in favor of the media defendants. *Levitt v Digital First Media*, unpublished opinion per curiam of the Court of Appeals, issued May 16, 2017 (Docket No. 330946) *(Levitt II)*.

Relevant to this appeal, plaintiff's suit also claimed libel and slander (claiming defamation), false light, intentional infliction of emotion distress (IIED), and civil conspiracy as to Bloem for statements he made to the news media that The Morning Sun paraphrased in the February 2015 article. In addition, plaintiff claimed IIED, intentional interference with business expectancy, and civil conspiracy as to James Felton for the audiorecorded incident and its subsequent distribution. Plaintiff later amended his complaint to make those same claims against Angela Felton for her role in providing the Tweets, and also allegedly the audio recording, to the police and CM Life. After a contentious discovery period, defendants moved for summary disposition.

The circuit court granted the motions under MCR 2.116(C)(10). Considering the claims against Bloem first, the court concluded that no genuine issue of material fact existed with respect to the fact that the statements Bloem made to The Morning Sun were substantially true and, thus, not defamatory. The court further concluded that the other alleged defamatory

---

[3] CM Life also obtained a copy of the audio recording. Plaintiff asserts that Angela Felton provided it, but Angela Felton denies that and the editor of CM Life testified that it was downloaded from the Internet.

statements Bloem made were not statements of actual fact or were not communicated to a third party. As to plaintiff's IIED claim against Bloem, the court determined that because the claim was predicated on Bloem's statements, which the court had found were not defamatory, the conduct did not satisfy the extreme standard necessary to sustain an IIED claim. The court also dismissed the false light claim as to Bloem because no genuine question of fact existed with respect to the fact that Bloem did not distribute false statements.

As to the claims against the Felton defendants, the circuit court found that plaintiff failed to produce evidence establishing that the distribution of the audiorecorded incident, as well as plaintiff's Tweets, interfered with a business expectancy. The court noted that the claim was predicated on negative statements, which were plaintiff's own statements, and because they were not false or defamatory, the speech was privileged. The circuit court likewise concluded that plaintiff failed to satisfy the requirement of extreme conduct to support his IIED claim, given that the statements distributed were his own. Finally, the circuit court dismissed the civil conspiracy claim as to all defendants because plaintiff failed to establish an underlying actionable tort, which is a required element of civil conspiracy.

II.

This Court reviews de novo a lower court's decision on a motion for summary disposition. A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). We must view all the evidence submitted by the parties in a light most favorable to the nonmoving party. *Id*. at 119-120. If no genuine issue of material fact exists and judgment is proper as a matter of law, then the motion was properly granted. *Id*. at 120. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "When considering a defamation claim, the Court must make an independent examination of the facts to make sure that the speaker's First Amendment right of free expression is preserved." *Edwards v Detroit News, Inc*, 322 Mich App 1, 12; 910 NW2d 394 (2017) (quotations and citation omitted).

III.

Defendant's first argument on appeal is that the circuit court erred because it granted summary disposition as to counts that defendants did not address in their lower court briefs. We disagree. First, we do not view defendants' motion and briefs so narrowly. Bloem addressed only plaintiff's defamation claim because he believed that the other claims were derivative. And, contrary to plaintiff's argument, the Felton defendants addressed all of the claims pertaining to them, i.e., IIED, tortious interference, and civil conspiracy. Second, assuming arguendo that defendants failed to address each claim, the circuit court did not err by granting them summary disposition on counts that they did not expressly raise. A court may grant summary disposition on its own motion. MCR 2.226(I)(1) ("If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay.").

-4-

III.

Defendant next argues that the circuit court erred in granting Bloem summary disposition of the defamation claim and erroneously relied on *Milkovich v Lorain Journal Co*, 497 US 1; 110 S Ct 2695; 111 L Ed 2d 1 (1990) in doing so. We do not agree.

"The elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005). "A communication is defamatory if, considering all the circumstances, it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Hope-Jackson v Washington*, 311 Mich App 602, 620; 877 NW2d 736 (2015) (quotations and citations omitted).

The substantial truth of a statement, however, is an absolute defense to a defamation claim. *Collins v Detroit Free Press, Inc*, 245 Mich App 27, 33; 627 NW2d 5 (2001). In this regard, "slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance." *Id*. (citation and quotations omitted). Under this test, it is not necessary that a defendant justify every word; rather, a defendant must demonstrate that any "inaccuracy in no way alters the complexion of the affair, and would have no different effect on the reader than that which the literal truth would produce . . . .'" *Id*. "[I]f the literal truth [would have] produced the same effect, minor differences are deemed immaterial." *Id*.

Plaintiff's defamation claim primarily relates to Bloem's comments in The Morning Sun article published in February 2015. The article stated that Bloem

> said Felton's legal team with [sic] be talking to their client and discussing next steps. Bloem said they feel some of the media techniques Levitt has used to market himself, including creating a 'Top Lawyer' prize he then awarded to himself, are unethical according to the guidelines that govern the legal profession. It's possible they may persue [sic] those issues with the Attorney Grievance Commission.

In accordance with *Levitt II*, unpub op at 5,[4] the circuit court found that Bloem's statement that Levitt created an award and then rewarded it to himself was substantially true. The court also found that Bloem filed a grievance against plaintiff with the Attorney Grievance Commission, and so that statement was also true and not defamatory. The court did not address, however, Bloem's statement that plaintiff's actions were unethical. Plaintiff argues that this statement could be interpreted by a reasonable jury as an assertion of fact rather than an opinion.

---

[4] In *Levitt II*, this Court ruled that The Morning Sun's August 2014 article stating that plaintiff awarded himself a "fake" award was substantially true. *Levitt II*, unpub op at 5.

"The First Amendment protects communications that cannot be reasonably interpreted as stating actual facts about the plaintiff, i.e., expressions of opinion are protected." *Edwards*, 322 Mich App at 13 (quotation marks and citation omitted). However, "a statement of 'opinion' is not automatically shielded from an action for defamation because expressions of 'opinion' may often imply an assertion of objective fact." *Smith v Anonymous Joint Enterprise*, 487 Mich 102, 128; 793 NW2d 533 (2010) (quotation marks and citation omitted). Whether a reasonable reader would interpret statements as asserting provable facts, as opposed to an opinion, often depends on the context in which the statement is made. *Hope-Jackson v Washington*, 311 Mich App 602, 622-623; 877 NW2d 736 (2015).

Viewed in context, Bloem's comment could not be reasonably interpreted as an assertion of fact. It is clear that Bloem was merely expressing his opinion as to plaintiff's ethics because he also contemplated bringing the matter to the attention of the Attorney Grievance Commission. This signals to the reader that while Bloem found plaintiff's behavior unethical, the body responsible for making those determinations had not addressed the matter. Our conclusion that Bloem's comment was protected opinion speech is buttressed by the fact that he provided the factual basis for his opinion. See *Sarkar v Doe*, 318 Mich App 156, 191; 897 NW2d 207 (2016) (holding that anonymous posts regarding a professor's alleged scientific misconduct were protected speech when based on underlying facts available to the reader). Bloem's opinion was based was on plaintiff's actions regarding the "Top Lawyer" award. Further, the factual basis to Bloem's opinion was substantially true. See *Fisher v Detroit Free Press, Inc*, 158 Mich App 409, 413; 404 NW2d 765 (1987) ("[A] statement of opinion is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."). For those reasons, we conclude that Bloem's statement regarding plaintiff's ethics was opinion speech protected by the First Amendment.

Plaintiff also alleged that Bloem made defamatory statements regarding plaintiff's teaching style. In response to Bloem's motion for summary disposition, plaintiff identified statements Bloem made regarding "rumors" that he heard about plaintiff's teaching style and his efforts to confirm those rumors. For instance, Bloem testified at deposition that he had heard that plaintiff gave extra credit to students who followed him on Twitter and that he later discussed that claim with others, including plaintiff. The circuit court resolved the statements identified by plaintiff by concluding that they could not reasonably interpreted as statement of facts and therefore were protected by the First Amendment, citing *Milkovich v Lorain Journal Co*, 497 US 1, 20; 110 S Ct 2695; 111 L Ed 2d 1 (1990).

Plaintiff argues that the court's reliance on *Milkovich* was improper because some of cases discussed in the cited page pertain to cases involving matters of public concern, which mandates heightened protection under the First Amendment. However, *Levitt II*, un pub op at 4, determined that The Morning Sun article did pertain to matter of public concern. Under the law of the case doctrine, both the circuit court and this panel must abide by that determination. See *Grace v Grace*, 253 Mich App 357, 362; 655 NW2d 595 (2002).

Moreover, the circuit court did not cite *Milkovich* for its discussion of public concern cases, but rather for the proposition that statements are not defamatory when they cannot reasonably be interpreted as stating actual facts about an individual. *Milkovich*, 497 US at 20. This proposition is not unique to cases relating to matters of public concern. Rather, it is a

general principle that, "[t]o be considered defamatory, statements must assert facts that are 'provable as false.' " *Ghanam v Does*, 303 Mich App 522, 545; 845 NW2d 128 (2014), quoting *Milkovich*, 497 US at 19. The point that the court was making is that Bloem's comments about plaintiff's teaching style were not assertions of fact, but were recitations of claims made to him by students. As the court reasoned, "Mr. Bloem's testimony shows that he was not stating as a fact that Mr. Levitt gave extra credit to students who followed him on Twitter, but was instead discussing it as an allegation about which he was trying to find out the truth." Indeed, Bloem testified that he did not know whether the allegations about plaintiff's teaching style were true. Thus, the court did not err on relying on *Milkovich*, and it correctly applied the cited rule of law to grant summary disposition of the defamation claim relating to plaintiff's teaching style.[5]

IV.

Plaintiff next argues that he presented sufficient evidence to support his claims of IIED as to all defendants. We disagree.

This Court has "recognized that the common-law tort of intentional infliction of emotional distress vindicates a person's right to be free from serious, intentional and unprivileged invasions of mental and emotional tranquility." *Cotton v Banks*, 310 Mich App 104, 129; 872 NW2d 1 (2015) (quotation marks and citation omitted). "To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (quotation marks and citation omitted). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (quotation marks and citation omitted). "It is for the trial court to initially determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004).

The circuit court correctly determined that plaintiff failed to create a genuine issue of material fact whether Bloem's conduct was extreme and outrageous. Plaintiff relies on the same documentary evidence that he relied on for his defamation claim. This conduct, however, does not approach the level of extreme and outrageous conduct necessary to state a prima facie case of IIED. Certainly Bloem's inquiries into unflattering rumors and Bloem's stated opinion in The Morning Sun article that plaintiff may have acted unethically could be expected to cause plaintiff

---

[5] Plaintiff's brief on appeal contains a single sentence with regard to the circuit court's dismissal of his false light claim: "Because the lower court's reliance on and application of *Milkovich* is error, the ruling on Bloem's motion as to the false light claim must also be reversed." Such a cursory argument without further explanation need not be considered by this Court. *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). In any event, because we conclude that that the circuit court did not err by relying on the standard from *Milkovich*, it follows that plaintiff's proffered rationale for reinstating his false light claim is without merit.

discomfort and some distress. However, the statements were not outrageous and were within the realm of the typical indignities, unflattering expressions, and inconsiderate acts that people are commonly expected to endure in the normal course of life. See *Mino v Clio School Dist*, 255 Mich App 60, 80; 661 NW2d 586 (2003).

The heart of plaintiff's IIED claim appears to be the audio recording of the incident with Sanney. Specifically, plaintiff objects to Bloem submitting the recording with his Request for Investigation to the Attorney Grievance Commission. Similarly, plaintiff argues that it was egregious for James Felton to share the recording with "anybody who wanted it." However, the circumstances under which the video was taken were anything but private. Plaintiff's altercation with Sanney took place on a public sidewalk. And although Sanney may have instigated the incident by calling plaintiff a "clown," it is clear from the transcript of the recording that plaintiff escalated the confrontation by verbally berating Sanney.

Given those circumstances, James Felton's decision to audiorecord the incident[6] and subsequently share it others was not extreme and outrageous. In this day and age, one must accept the possibility that one might be recorded in public. That possibility heightens when one chooses to engage in vitriolic behavior. There is a concomitant possibility that such recordings will be shared with others and posted to the Internet. In sum, we conclude that the recording and sharing of a rant on a public sidewalk cannot reasonably be regarded as extreme and outrageous behavior.[7]

Similarly, we fail to see how the sharing of materials already published on the Internet supports an IIED claim. For instance, plaintiff takes issue with Angela Felton sharing plaintiff's Tweets with campus police and CM Life. Plaintiff also relies on Bloem's decision to send the Attorney Grievance Commission a YouTube skit that plaintiff appeared in. However, that content was freely available to anyone online, having been published by plaintiff or with his consent. Under those circumstances, a reasonable jury could not conclude that sharing plaintiff's content with others constitutes extreme and outrageous behavior.

V.

Plaintiff next argues that the circuit court erred by granting the Felton defendants summary disposition of his intentional interference with business expectancy claim. While we agree with plaintiff that the court erred in relying on *Lakeshore Community Hosp v Perry*, 212 Mich App 396; 538 NW2d 24 (1995), we nonetheless conclude that the court correctly granted summary disposition of plaintiff's tortious interference claim.

---

[6] We note that although plaintiff claimed to not be aware that the incident was being recorded, James Felton testified that he removed his phone from his pocket during the incident to begin recording and held his phone by his side thereafter. Thus, while plaintiff may have been distracted by Sanney, there were indications that the incident was being recorded.

[7] We do not mean to suggest that third-party posting or publishing of *private* statements or activities cannot give rise to a viable action for IIED.

"The elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 323; 788 NW2d 679 (2010). To establish tortious interference, "a plaintiff must demonstrate that the defendant intentionally did something illegal, unethical or fraudulent" without justification. *Id*. at 323-324.

Here, the basis of plaintiff's tortious interference claim is that James Felton recorded the altercation between Sanney and plaintiff, distributed this audio recording to others, and facilitated its publication on the Internet, all with the intent to damage plaintiff's law practice; and that Angela Felton provided a packet of information, including plaintiff's Tweets, and allegedly the audiotape, to CM Life, also with the intent to cause damage to his law practice. The court relied on *Lakeshore Co Hosp*, 212 Mich App at 401, which provides that when tortious interference is based on defamatory statements, privileged speech is a defense. The court determined that the audio recording and plaintiff's Tweets did not contain false statements and therefore defendants' distribution of those statements was not defamatory.

We agree with plaintiff that *Lakeshore* is not applicable to the facts of this case.[8] While tortious interference *may* be based on defamation, there are of course other acts which would support such a claim. The underlying acts in this case were the distribution of the audio recording and plaintiff's Tweets. Plaintiff did not allege that those acts constituted defamation, and the court erred in analyzing plaintiff's claim under that premise. In other words, it is irrelevant to plaintiff's tortious interference claim that the Felton defendants did not distribute defamatory statements. Accordingly, the court erred in relying on *Lakeshore*.

Nonetheless, we may affirm the circuit court when it reaches the right result for the wrong reason. *Gleason v Michigan Dep't of Transp*, 256 Mich 1, 3; 662 NW2d 822 (2003). As noted tortious interference with a business relationship requires more than an intentional act. Plaintiff must show that defendants committed an illegal, unethical or fraudulent act without justification. *Dalley*, 287 Mich App at 323. After review, we conclude that plaintiff has failed to provide evidence of actions rising to that level. The Felton defendants merely shared with others plaintiff's own public statements. Regardless of their intent, defendants did not engage in unlawful or unethical behavior. Accordingly, we affirm the circuit court because defendant failed to show that the Felton defendants committed acts that would support a claim of tortious interference.

VI.

---

[8] Plaintiff also argues that the circuit court's reliance on *Lakeshore Co Hosp* was improper because that case concerned a public figure. However, the court cited *Lakeshore Co Hosp* for the proposition that privileged speech is a defense when a tortious interference claim is based on defamation. That the case involved a public figure has no bearing on this general rule of law.

Finally, plaintiff raised a civil conspiracy claim as to all defendants. The essential elements of a civil conspiracy are: (1) a concerted action (2) by a combination of two or more persons (3) to accomplish an unlawful purpose (4) or a lawful purpose by unlawful means. *Admiral Ins Co v Columbia Casualty Ins Co*, 194 Mich App 300, 313; 486 NW2d 351 (1992). A claim for civil conspiracy must be based on an underlying actionable tort. *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384-385; 670 NW2d 569 (2003). Plaintiff's claim for civil conspiracy is based on his claims of defamation, false light, IIED, and tortious interference with business expectancy. Because the circuit court properly dismissed all of these claims and no underlying tort exists in this case, the circuit court also properly dismissed the civil conspiracy claim.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Jane M. Beckering